**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 95-11101
Summary Calendar

_____


BILLY FRANK DAVIS,
                         Plaintiff-Appellee-Cross Appellant,

VERSUS

DIXIE BURKS, Nurse,
                         Defendant-Appellant-Cross-Appellee,

and

JOHN GAGE, Sheriff,
                         Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:94-CV-1838-H)

_____
September 6, 1997
Before WISDOM, JOLLY, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

## BACKGROUND

Billy Frank Davis (Davis), the plaintiff-appellee, is a prisoner in a Texas penitentiary. Dixie

Burks (Burks), the defendant-appellant, was the nurse at the prison in which Davis was incarcerated.

In July 1993, Davis first complained to prison personnel that he had cold-like symptoms and

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

requested Tylenol and antihistamines. He received all the medicine that he requested. After his first week on the medication, he informed Burks that he was not feeling any better. Burks instructed Davis to continue taking the medication.

In August, Davis again complained to Burks, who gave Davis more of the same medications. On Friday, September 10, 1993, Burks took Davis's temperature, which read 101.5 degrees, prompting Burks to give Davis an antibiotic.[1] At this time, Burks also scheduled an appointment for Davis with Dr. David Fearis, the prison physician, for the following week during Dr. Fearis's regular visit to the prison. Burks next saw Davis on Tuesday, September 14, at which time his temperature had risen to 103.8 degrees.[2] As scheduled, Dr. Fearis visited Davis the next day. Though Davis did not appear extremely ill, Dr. Fearis nevertheless ordered a chest X-ray for Davis because his illness did not respond to the antibiotics and because of the dry cough that Burks had indicated in Davis's record. The X-ray revealed that Davis had pneumonia. Dr. Fearis then wrote a letter to the prison officials and Burks in which he stated that Davis required "immediate hospitalization".[3] Immediately making this diagnosis, Dr. Fearis learned that Davis was about to be transferred to the Texas Department of Corrections (TDC), another prison which had superior medical facilities, and would arrive there within three hours. Because he believed that TDC could properly care for Davis, Dr.

---

[1]     Davis contends that Burks illegally prescribed the antibiotic without doctor authorization.

[2]     Burks did not work on the weekends, thereby explaining two of the three days of delay between her visits with Davis.

[3]     Dr. Fearis testified that the lack of an outward appearance of Davis's illness caused him to refrain from sending Davis to the hospital himself. Davis testifies, however, that he was visibly ill--that he had lost weight, that his face was "shrunk in", and that he constantly sweated. Davis has offered no other evidence or testimony to support this assertion.

Fearis did not object to the transfer and did not believe that delaying treatment for those few hours would harm Davis. The medical staff at TDC then diagnosed Davis as suffering from tuberculosis.

Upon learning of his affliction, Davis filed this civil rights suit in federal district court, contending that Burks and Sheriff John Gage, who was in charge of the prison that employed Burks, violated his Eighth Amendment rights by failing to provide him with adequate medical care. Both defendants moved for summary judgment on the basis of qualified immunity, which the district court granted in part and denied in part. Burks now appeals the district court's denial of her motion for summary judgment.

## DISCUSSION

Though the general rule prevents this Court from having jurisdiction over interlocutory appeals, an exception creates jurisdiction over interlocutory appeals that challenge a district court's denial of a summary judgment motion asserting qualified immunity, provided that the denial turns on an issue of law.[4]

The Eighth Amendment protects prisoners from "cruel and unusual punishments" and requires prison officials to provide adequate medical care.[5] To prevail on his claim of inadequate medical care, Davis must establish that the prison official in charge of his medical care, in this case Burks, was

---

[4]    See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

[5]    Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).

3

deliberately indifferent to his serious medical needs.[6] Construing the facts in the light most favorable to Davis, we find that Davis has not established a genuine issue of material fact.[7]

> "The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, 'sufficiently serious'. Second, the charged official must act with a sufficiently culpable state of mind. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[8]

Davis's allegation that Burks deprived him of adequate medical care when she failed to diagnose correctly and to treat Davis's tuberculosis satisfies the objective prong of the deliberate indifference test. Davis, however, has presented no evidence from which a reasonable jury could conclude that Burks recognized Davis's symptoms as those of tuberculosis and chose to ignore that threat to Davis's health.

In support of the second prong, Davis offers only his own uncorroborated testimony and the testimony of two doctors as expert witnesses. Davis's expert witnesses both concluded that Burks failed to examine and to diagnose Davis properly. The experts also testified that deliberate indifference is one possible explanation for Burks's failure to properly examine Davis. The testimony by two doctors that "deliberate indifference", a legal conclusion, is one possible explanation for

---

[6] Estelle, 429 U.S. at 104.

[7] See Johnson v. Treen, 759 F.2d 1236, 1237 (5th Cir. 1985).

[8] Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted), cert. denied, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995).

Burks's deficiencies is not sufficient evidence for a jury to rule in Davis's favor.[9] In addition, Davis's own testimony reveals that Burks always responded to his requests for medicine and treated him kindly. The record clearly shows that Burks made numerous attempts to treat Davis's ailments and that Burks scheduled Davis to see Dr. Fearis when the antibiotics worsened Davis's condition. Davis fails to offer any evidence that Burks was aware of tuberculosis-type symptoms in Davis and that she chose to ignore those symptoms despite her recognition that Davis's health was in danger;[10] instead, Davis proffers evidence suggesting only that Burks erroneously treated Davis for a cold when, in fact, he suffered from a much more serious disease.

While Davis may have set forth facts indicating medical malpractice, a constitutional violation requires more than evidence that "a physician has been negligent in diagnosing or treating a [prisoner's] medical condition".[11] Accordingly, we REVERSE the judgment of the district court denying Burks's motion for summary judgment and remand for the entry of an order dismissing Davis's claim against Burks.

---

[9] One of the experts agreed only that it was *possible* that Burks "just didn't give a damn". Record Excerpts at 75, ll. 20-22. This statement hardly meets the criteria for establishing deliberate indifference.

[10] See Johnson, 759 F.2d at 1238; cf. Hathaway, 37 F.3d at 67-68 (finding that there is a genuine issue as to whether the prison physician was deliberately indifferent based on evidence that the physician was aware of the prisoner's problem for over two years, yet never informed the prisoner nor discussed possible remedies, during which time the prisoner suffered extensively).

[11] See Estelle, 429 U.S. at 106.